```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 2/13/2023

| | |
|---|---|
| **BRET W. JACOBSON,** | |
| Plaintiff, | |
| -against- | **21-cv-2384 (ALC)** |
| **CITIGROUP GLOBAL MARKET HOLDINGS, INC.,** | <u>OPINION AND ORDER</u> |
| Defendant. | |

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Bret Jacobson, an individual broker, brings this suit against Defendant Citigroup Global Market Holdings Inc. ("CGMHI" or "Defendant"), headquartered in New York, alleging fraud under New York state law and filing of a false registration pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k. On June 9, 2021, Defendant moved to dismiss this action pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. This Court denied the Defendant's motion in its January 28, 2022 Opinion and Order. ECF No. 23. Defendant now moves for dismissal pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). For the reasons discussed below, the Defendant's motion is **GRANTED.**

## BACKGROUND

### I. Procedural Background

After Defendant's motion to dismiss pursuant to Rule 12(b)(1) was denied, the parties agreed to a briefing schedule for Defendant's motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6).[1] ECF No. 24. Defendant filed its motion and supporting papers on March 11, 2022. *See* ECF Nos. 25-27. Plaintiff's opposition was due on April 15, 2022. After failing to file its opposition,

---

[1] The Court established a two-track briefing schedule in this action whereby the parties were directed to first brief the issue of subject matter jurisdiction. ECF No. 14.

the Court issued an order to show cause as to why Defendant's motion should not be deemed as unopposed. ECF No. 29. The Court directed Plaintiff to file a written response on or before April 26, 2022. To date, Plaintiff has not filed an opposition to Defendant's motion. Thus, the motion is deemed unopposed and fully briefed.

**II.      Factual Background**

In or before February 2020 and in March 2020, Plaintiffs purchased in the secondary market exchange traded notes issued by Defendant. Compl., ECF No. 1 ¶ 4, *Id*., Exs. C and D, ECF Nos. 1-3, 1-4. The notes Plaintiffs purchased were denominated "Velocity Shares 3x Long Crude Oil ETNs" (the "ETNs"). The ETNs were linked to the S&P GSCI Crude Oil Index ER (the "Index"), which tracks futures contracts for crude oil. Compl. ¶ 3; *see also* Rubin Decl., Ex. A, (the "Pricing Supplement"), ECF Nos. 27-1-6.[2] The ETNs were unsecured debt obligations that were intended to be daily trading tools for sophisticated investors. They reflected a leveraged long or leveraged inverse exposure to the performance of the Index on a daily basis. *See* Pricing Supplement. Unlike debt securities that provide interest and a guaranteed return of principal, the ETNs offered investors the right "to receive a cash payment at maturity, upon early redemption or upon acceleration, as applicable, ... linked to the performance of the Index." *Id*. at 3.

---

[2] Although the Court generally should not look outside of the pleadings to decide a motion to dismiss a complaint, the Court may consider "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit" of which a court may take judicial notice. *Sgalambo v. McKenzie*, 739 F.Supp.2d 453, 470 (S.D.N.Y. 2010) (quoting *ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). Plaintiff references the Pricing Supplement filed by Defendant in his complaint; therefore, it is incorporated into the complaint by reference. *See* Compl. ¶ 2.

Defendant published the Pricing Supplement, dated March 18, 2020, in which it discloses the risks of investing in the ETNs. The Pricing Supplement explains that:

> The ETNs are riskier than securities that have intermediate- or long-term investment objectives, and may not be suitable for investors who plan to hold them for a period other than one day. Any decision to hold the ETNs for more than one day should be made with great care and only as the result of a series of daily (or more frequent) investment decisions to remain invested in the ETNs for the next one-day period. Accordingly, the ETNs should be purchased only by knowledgeable investors who understand the potential consequences of an investment linked to the Index and of seeking daily compounding leveraged long . . . investment results . . . .

Pricing Supplement at 1. The Pricing Supplement also disclosed risk factors related specifically to the volatility of crude oil markets that could impact the trading prices and redemption values of the ETNs. For example, the Pricing Supplement explained that the ETNs "could experience greater volatility" than other investments because the Index tracks a single commodity – crude oil. *Id*. at 46; Memo. of Law in Supp. of Def.'s Mot. to Dismiss ("MTD"), ECF No. 26 at 3-4. Furthermore, the Pricing Supplement explained that the trading price of the ETNs is determined based on trading in the secondary market, not based on the so-called "indicative value" of the ETNs. Pricing Supplement at 16. *See generally Steadman v. Citigroup Glob. Markets Holdings Inc.*, 592 F. Supp. 3d 230, 235 (S.D.N.Y. 2022).

The Pricing Supplement also explains that CGMHI has the right to accelerate the ETNs at its "option at any time," and that the ETNs will be automatically accelerated if the Index declines to a certain level. Pricing Supplement at 36. Upon optional acceleration, investors are entitled to "receive a cash payment per ETN in an amount . . . equal to the Closing Indicative Value of such series of ETNs on the final Valuation Date of the Optional Acceleration Valuation Period." *Id*. at 61. The Pricing Supplement explains that "the return on the ETNs will not be based entirely on Index fluctuations during this period" and that investors would "not entirely benefit from any favorable

3

movements in the level of the Index during this period as the Index Exposure declines." *Id*. at 36. On March 19, 2020, when "the price of oil was at a historic low," CGMHI announced the optional acceleration of the UWT ETNs. Compl. ¶ 3; Rubin Decl., Ex. B (the "Press Release"). The Press Release states that the Optional Acceleration Valuation Period would begin on March 25, 2020 and was expected to end on March 31, 2020, and that investors would be paid on April 3, 2020. Press Release. On March 26, 2020 – after the Press Release was issued – Plaintiff purchased 3,400 ETNs. *See* Compl., Ex. D, ECF No. 1-4 at 5.

      Plaintiff brings claims under Section 11 of the Securities Act of 1933 and New York common law fraud. Plaintiff seeks $366,635.50 in damages comprised of $36,663.55 in compensatory damages and $329,971.95 in punitive damages. Compl. ¶¶ 4, 6; *see id.* at 8. Plaintiff concludes that an "acute blatant fraud" occurred because on March 19, 2020 the Index increased by 24.39% and trading prices of the ETNs should have increased by 73.17% (3x the Index increase) but only increased by 23%. *Id*. ¶¶ 3, 4. Plaintiff further asserts that, to keep secondary market trading prices in line with values approximating 3x the Index, CGMHI "used a simple computer program . . . to ensure that if the price of [the ETNs] deviated from the price it should have been to follow the index, the computer would automatically buy or sell enough [ETNs] to bring the price to where it should be so that the index was followed correctly." *Id*. ¶ 5. Plaintiff also alleges that "a human that had access to the defendant's software must have chosen to change it . . . and this change was made on March 19, 2020" when the ETN trading prices "grossly under-tracked the index by over 50 percentage points, causing a nearly 80% loss for . . . stockholders." *Id*. ¶ 3.

## LEGAL STANDARD

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). However, the Court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Claims should be dismissed when a plaintiff has not pleaded enough facts that "plausibly give rise to an entitlement for relief." *Id.* at 679. A claim is plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). While not akin to a "probability requirement," the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). Accordingly, where a plaintiff alleges facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

As to Plaintiff's *pro se* status, it is "well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citation omitted); *see Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (holding that a *pro se* party's pleadings

must be liberally construed in his favor and are held to a less stringent standard than the pleadings drafted by lawyers). "Pro se litigants must nonetheless abide by the same rules that apply to all other litigants." *Farmer v. United States*, No. 15-cv-6287, 2017 WL 3448014, at *2 (S.D.N.Y. Aug. 10, 2017) (citations and quotation marks omitted).

Section 11 of the Securities Act of 1933 provides a private right of action to investors of a security if "any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact." 15 U.S.C. § 77k(a). "To prevail on a Section 11 claim, a plaintiff must show that the relevant communication either misstated or omitted a material fact." *Fait v. Regions Financial Corp.*, 655 F.3d 105, 109 (2d Cir. 2011) (internal quotation marks and citation omitted). Under § 11, "a misrepresentation of fact is material if 'an investor would attach importance to it in making an investment decision.'" *Ho v. Duoyuan Glob. Water, Inc.*, 887 F. Supp. 2d 547, 562 (S.D.N.Y. 2012) (quoting *In re APAC Teleservice, Inc. Sec. Litig.*, 1999 WL 1052004, at *9 (S.D.N.Y. Nov. 19, 1999)). A plaintiff alleging a claim sounding in fraud must also meet the heightened particularity pleading standard of Fed. R. Civ. P. 9(b). Rule 9(b) "requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 403 (2d Cir. 2015). *see also Ho*, 887 F. Supp. 2d at 562.

## DISCUSSION

### I.     Section 11 Claim

Defendant argues that Plaintiff's Section 11 claim should be dismissed because the Complaint (a) fails to identify any untrue statement of material fact; (b) that is contained in a

registration statement at the time it became effective; or (c) to trace Plaintiff's purchases to a specific registered offering. The Court finds that the Complaint fails to state a claim under Section 11 of the 1933 Securities Act.

The Complaint alleges that CGHMI "advertised" the ETNs to track the Index and that this alleged advertisement was false because the trading prices for the ETNs did not track the Index on March 19, 2020. Compl. ¶ 3. However, there "cannot be a material misstatement or omission if defendants' statements explicitly disclosed the very risks about which plaintiff claims to have been misled." *Steadman*, 592 F. Supp. 3d at 237 (citing *Y-GAR Cap. LLC v. Credit Suisse Grp. AG*, No. 19 Civ. 2827 (AT), 2020 WL 71163, at *4 (S.D.N.Y. Jan. 2, 2020)).

Here, the Pricing Supplement warns investors of the particular and heightened risks associated with investing in the ETNs. The Pricing Supplement expressly warns that trading prices for the ETNs were determined by the market—not CGMHI—and could "vary significantly" from the Indicative Value for the UWT ETNs based on the Index. Pricing Supplement at 18. The Pricing Supplement further states that the trading prices for the ETNs could be influenced "by many unpredictable factors" beyond CGMHI's control like global supply and demand for crude oil and economic events affecting the commodities markets. *Id*. at 38. Nor does CGMHI or the name of the ETNs make any statement that the value of the ETNs will faithfully track three times the Index on a daily basis. Rather, the "3x" refers to the value at "maturity or upon early redemption or acceleration," when the "holders of each ETN will receive an amount in cash that will vary depending on the level of the Index." *Id*. at 55. While the title of the ETN includes "3x," the Pricing Supplement explains that "3x" is tied to payment and value at maturity, redemption, or acceleration. *Id*. at 3, 9. "The Pricing Supplement thus forecloses the notion that the "3x" included in the ETNs'

name is a representation that the ETN on a daily basis will rise or fall three times the extent to which the Index rises or falls[—][r]ather the daily value of the ETN is determined in the market." *Steadman*, 592 F. Supp. 3d at 247; *see* also Pricing Supplement at 18; *Thomas v. Citigroup Glob. Markets Holdings Inc.*, No. 21cv3673 (VEC) (DF), 2022 WL 1051158, at *15 (S.D.N.Y. Mar. 1, 2022), *report and recommendation adopted as modified*, No. 21-CV-3673 (VEC), 2022 WL 951112 (S.D.N.Y. Mar. 30, 2022). Therefore, Plaintiff has failed to state a claim under Section 11.

Furthermore, under Section 11, "it is not sufficient that, at some point after the registration statement became effective, some subsequent event made it no longer accurate." *Jiajia Luo v. Sogou, Inc.*, 465 F. Supp.3d 393, 406 (S.D.N.Y. 2020). Here, Plaintiff's Complaint fails to allege that the statements identified were untrue at the time the registration statement became effective. Instead, Plaintiff alleges that that the Pricing Supplement "became untrue." Compl. ¶¶ 2, 5. A statement that becomes untrue, is by definition not one that was untrue at the time it was made. Therefore, the Section 11 claim is dismissed. *See In re Hexo Corp. Securities Litigation*, 524 F.Supp.3d 283, 300 (S.D.N.Y. 2021) (dismissing Section 11 claim "based on hindsight pleading").

## II.     Common Law Fraud Claim

The Court declines to exercise jurisdiction over the Plaintiff's claim for common law fraud under New York state law. *See* 28 U.S.C. § 1367(c)(3) (providing that the district court "may decline to exercise supplemental jurisdiction" once the court "has dismissed all claims over which it has original jurisdiction"). Because the Court dismisses Plaintiff's federal claim and the Court has already found there is no basis for an exercise of diversity jurisdiction over Plaintiff's common law

fraud claim,[3] the Court declines to exercise supplemental jurisdiction over Plaintiff's common law fraud claim. *See Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").

## CONCLUSION

The Defendant's motion is **GRANTED**. The Clerk of the Court is respectfully directed to terminate ECF No. 25. Any motion for leave to file an amended complaint will be submitted by **March 3, 2023**.

**SO ORDERED.**

Dated:   February 13, 2023
         New York, New York

**ANDREW L. CARTER, JR.**
**United States District Judge**

---

[3] *See* ECF No. 23 at 3 ("Plaintiff may not invoke this Court's subject-matter jurisdiction under 28 U.S.C. § 1332(a).")